in case number 23-6470 United States v. Burgess. Mr. Bell, why don't you just wait a minute for the, for the siren. Okay, Mr. Bell, whenever you're ready. Thank you, Your Honor, and good morning. May it please the court. My name is Martin Bell from Simpson Thatcher and Bartlett. I represented the defendant, Ernest Murphy, at certain proceedings at the lower court level, along with other members of my firm. And I've asked for a minute in reserve for rebuttal. This is, in many ways, a somewhat alarming case. And our briefing lays out really two buckets of concern with respect to conduct both within the grand jury and conduct of a Brady disclosure violation nature. That gets at the, at best, sort of recklessness and sloppiness that infected confidence in the result at a number of stages. But I think that it may make the most sense with my limited time today to talk about two particular inflection points, one in each of those buckets, that best exemplify the concern that I'm trying to describe. Beginning with the grand jury. So at the time of the grand jury presentation at issue, that is the government's obtaining of the S3 superseding grand jury about a month before Mr. Murphy, the lone defendant remaining in the case, going to trial. The government knew a number of things from its cooperating witnesses, and these are undisputed. The government knew that Mr. Murphy had nothing to do with the conspiracy at the time of what is referred to within the briefing as the 2013 shooting. And I want to be clear about that. Mr. Murphy had nothing to do with the drug trafficking activities of the conspiracy and of the drug trafficking organization at the time. Likewise, the information that the government had from its witnesses, and this is also undisputed, is that Mr. Murphy didn't get involved with the drug game at all at that point. And that he had been acquitted of involvement in a separate state trial with the 2013 shooting. Can I just ask you to fast forward to your theory of prejudice on this grand jury issue? I mean, if that evidence was not admitted, what is your theory for how your client was prejudiced? So it would have been a different trial in a number of ways. I think that the colloquy between the grand jury and the prosecutor presenting the evidence and the subsequent testimony from the agent, which was wrong, very clearly demonstrates that there was a real question and grave doubt that the 924C count, that the handling of the gun in furtherance of the drug conspiracy count, would have been voted upon affirmatively by the grand jury at all. To talk about prejudice more squarely, Judge, had that count... But I'm not sure that's... The Supreme Court has suggested that it's not enough to say, well, the grand jury wouldn't have indicted because the petty jury convicted and found guilt beyond a reasonable doubt. So why is this different than that situation? So I think that among other reasons, Judge, the trial as a whole would have been a vastly different experience for the jury. Here is perhaps the most sort of viscerally, I think, appealing way to put it. Because the evidence... Sorry, because the 924C count, count two, was charged, there were something on the order of six or seven guns that were presented to the jury, none of which Mr. Murphy was alleged to have handled, but that came in as a result of the... Because they were relevant to the drug... To the 924C count. Because that's the only way the conspiracy came in. Without that count, we are talking about the presentation of one gun under an extraordinarily limited theory to that same... The grand jury probably wouldn't have returned an indictment if whatever misconduct hadn't happened. Then it would necessarily be the case that that would be prejudicial. And the Supreme Court has said, no, no. If you get to the trial stage and the evidence comes in and the grand jury... And the petty jury says guilty beyond a reasonable doubt, that sort of washes away whatever happened in the grand jury. So why is the fact that the trial would change if that count weren't there? Not just a subset of the situation, that if the grand jury never indicted at all and it wouldn't have, if absent the misconduct, that would be pretty severe prejudice. And the Supreme Court says that doesn't matter. Because the relatively probative nature of those guns, that sort of 403 mix that courts oversee and that this district... That this court would have had to oversee in a different context would fundamentally have been different. Because at that point, you are bringing in these firearms... But at the same time, if you're bringing in these firearms, isn't the argument that he's still responsible for those firearms if that's part of the conspiracy that he joined? And I think the answer to that is no, Judge, because he wasn't really... Then why do they come in even with a 924C count? Because the 924C count is going to turn on the gun that he allegedly did have a relationship to. So why aren't you making the same argument anyway, that all those other guns are irrelevant and should never have been admitted? I mean, I think fundamentally that is the argument that we're making. I think we're taking a slightly different route there. Well, I don't think it is. I mean, there's no argument here that the district court erred in a 403 balance of whether all of these other guns that were implicated in the case before he was alleged to have participated in the conspiracy should not have come in at all. Because it comes in on the government's theory only on the ubiquitous theory that this is background that kind of establishes what the conspiracy – that the conspiracy existed. And it's far more prejudicial in a case where there is a gun charge to have the jury confused by all these guns that aren't really an issue in the case. That's an argument. But that's not an argument that you make in your brief, that there was trial error. You're going back to the grand jury, which seems to me a somewhat problematic argument. Well, Judge, I mean, I think that there – the other argument I would suppose here is that there is some prejudice in Mr. Murphy's having to defend himself for a count for which there was insufficient evidence to actually obtain a true bill at all. And if that is the sounder argument, I'm happy to – Well, I'm not sure it's the sounder argument. That's the argument that the Supreme Court has specifically rejected, it seems to me, is that if there was insufficient evidence before the grand jury to support an indictment, but there was sufficient evidence at the trial that led a trial jury to find guilt, then we don't look back at the sufficiency of the evidence before the grand jury. Isn't that specific, the specific holding of the mechanic? Well, it is, Judge, although I think I'm struggling to say something slightly different. So with respect to – we've got two categories of guns. We've got the 2013 gun, which had no connection to Mr. Murphy but for what I would consider the botched testimony of the agent. But the trial jury convicted presumably not based on that gun, right? So the trial jury – Aren't they instructed as to it has to be a gun during the time of the conspiracy? That's correct, Judge. And likewise, with respect to the other guns, there were limiting instructions that essentially said that they are available – they are usable only for background to show access to guns. Okay, I think I have your point. Could you, I hope with presider's indulgence, give us the Brady argument, at least in brief outline? Sure. So the inflection point that I think makes sense to focus on here, Your Honor, is the Taequann Robinson 2018 recording. This is something that even a very skeptical district court acknowledged was exculpatory information. The court then essentially dismissed it because later in that same interview – well, let's talk about what made it exculpatory. Mr. Robinson stated that Mr. Murphy had no connection to firearms or really anything dirty within the house, that the two of them occasionally showed up there and smoked marijuana, but otherwise that Murphy wasn't tied to anything there. But then he was asked later on in the interview, and after a break, and after some repetition, a different way. He's like, there was a dichotomy set out where it's basically like the stuff in there is either yours or Mr. Murphy's, right? So who was it? At which point he says, oh, well, it wasn't mine. That was all Mr. Murphy. It was his crib. The idea that Mr. Murphy's counsel at the time – and we didn't represent Mr. Murphy at the time – but the idea that Mr. Murphy's counsel at the time could not have made use of that exculpatory information because of the later, quote-unquote, recanting – Yes, but could you explain to me how he could make use of that, given that Mr. Robinson did not testify? So all of this, the inculpatory part and the exculpatory part, is all hearsay. So we are, I think, in the realm of speculation to some degree, but I can think of two at least broad – That would be one. But that's pretty weird because Robinson by now is committed to the second version of this, and so you'd be calling him in order to impeach testimony that the government never offered in the first place from Robinson. Also, he either is still in a position where he could assert a Fifth Amendment privilege, right, or he's agreed to cooperate with the government, albeit not called upon to testify in this case. Either way, it's a little hard for me to imagine a defense lawyer calling Robinson in these circumstances. So with the first – And getting him to repeat this story. So with the first of those theories, Judge, I would suggest that Mr. Robinson actually wasn't that tied to the testimony that he gave after additional pressure. Asked open-ended about the ownership and the use of the items within the stash house, he answered one way and then asked basically, hey, it's you or him. He was asked another way. So that is something at the very least that a defense attorney could make some hay of if Mr. Robinson were not to double back to begin with. But it has to be enough hay to persuade us that a jury would have come out the other way under that circumstance. Well, I think it has to be sufficient hay to produce – I think the phrase that comes out of the law is a reasonable likelihood. It's not definite. It's not guaranteed. It's a reasonable likelihood of prejudice, and I believe that we can find one there just given what Mr. Robinson testified to in untainted circumstances. Okay. I understand. Okay. Thank you, counsel. You've preserved him in for a while. We'll hear from the governor. Good morning, Your Honors, and may it please the court. My name is Jun Xiong, and I represent the United States on this appeal, as I did in the post-conviction proceedings before Judge Sullivan. Judge Sullivan did not err, much less abuse his discretion in denying the defendant's applications for relief under Brady and Rule 33. Let me start with the grand jury issue, which is where my adversary started as well. That claim fails for the mechanic reason that's already been discussed between the court and appellant counsel. But I want to start with this. The allegation that was lodged below was that the government was not merely reckless, but that it engaged in deliberate, bad-faith misconduct before the grand jury, and then lied to Judge Sullivan about it. And Judge Sullivan, who has handled this case from the very beginning, who personally interrogated the prosecutor who handled the grand jury proceedings, who handled the motions in limine as to the 2013 gun before trial, and who presided over trial itself, found zero basis, none whatsoever, for the extraordinary allegations that were alleged below. There is no basis in this argument. But that's not quite the argument that they're making here. They're making an argument that I think is fairly subsumed within that, that it was, in Mr. Bell's way of putting it, highly reckless. So a couple things on that, Your Honor. First of all, I think in light of the Bank of Nova Scotia decision that's cited in the appellant's brief, the Supreme Court decision, the notion that recklessness in putting evidence before the grand jury, that that is sufficient for relief, is seriously in question. Right. That's a legal argument about why his present argument is wrong, right? That's different than what you started out with, which is an attack on an argument that he's no longer making. Not before Judge Solomon. You're not the, well, I don't know about that, but you're not the lawyer who did that grand jury presentation. Do you have any explanation for why? Well, first of all, am I right that the grand jury presentation that Mr. Bell is talking about resulted in a superseding indictment that for the first time alleged a 940, 24C count against Mr. Murphy? Is that right or wrong? That's correct, Your Honor. That's correct. And so why in making that presentation was it relevant to put to the grand jury evidence that Mr. Murphy had possessed a weapon, or there's evidence that he possessed a weapon or attempted to possess the weapon, several years before the government alleges he got involved in the conspiracy? And in connection with an episode that, at least by the time of the trial, the government knew, and maybe at the time of the grand jury presentation knew, that its own witness said that had nothing to do with the conspiracy, that 2013 shooting. On what theory was it relevant to put that 2013 gun story before the grand jury in connection with this case? On the exact theory that the government advanced the very day the grand jury returned that indictment in motions eliminated before Judge Sullivan and articulated to the defense, which is, for starters, even a non, we'll call it a 924C gun, in other words, a gun that itself is possessed during and in furtherance of the conspiracy, a gun can still be direct evidence of the existence of the conspiracy if the gun itself was not possessed during and in relation to the conspiracy. For example, it could tend to show, and this is one of the arguments that the government advanced in motions eliminated unsuccessfully, but in good faith before Judge Sullivan, it tends to show the relationship between the conspirators even before the narcotics conspiracy began. It could also tend to show that one or more of those co-conspirators had access to guns, even though this particular gun was not one that was being used to advance the narcotics conspiracy. And separate and apart from those purposes that would be direct evidence, in the government's view, of the existence of the conspiracy, it's also, at a minimum, and the government also advanced this argument in motions eliminated, 404B evidence that goes to access to guns, as said before, intent, motive, et cetera. Ultimately, of course, Judge Sullivan rejected those arguments, but the fact that Judge Sullivan rejected those arguments does not mean that the government either acted in bad faith or acted recklessly in eliciting that testimony before the grand jury. And I think a fair reading of the colloquy that existed between the prosecutor and the witness and also between the prosecutor and the grand juror makes clear that the prosecutor is not trying to elicit or suggest this is a drug-motivated gun. There was a question that was asked, and I don't have the exact words, but in essence, do you know what this gun was used for? What was the purpose of the gun? And the witness's answer was no, or the cooperator didn't have anything meaningful to say about that. If the government's purpose, either recklessly or in bad faith, was to suggest to the grand jury that this was a drug-motivated, a drug-conspiracy gun, the answer would have been this was a drug-conspiracy gun. No one said that. No false testimony on this was elicited, period. And so for that reason, although, as Judge Sullivan stated below, these allegations of prosecutorial misconduct are certainly incendiary, there is no basis to them whatsoever. And this is a judge who, when he presided- We know Judge Sullivan. Exactly, Your Honor. I don't think we want to hear about what you might think Judge Sullivan was inclined to agree with the government or not. That's not the point. Well, I wasn't about to make that point. No, you were going to say this is the judge who was totally familiar with this trial and this indictment because he presided over it from the beginning. And who, at other points, with respect to other mistakes, was severe in his criticism of the government, and justifiably so. And yet, despite the colloquy with the prosecutor, found no basis to this whatsoever. Let me move briefly to the 2018 Robinson reporting, which is the only recording that was discussed by my adversary. As Judge Sullivan found, the defense cannot articulate any respect in which the government's nondisclosure of that recording was material. That it would have led to a reasonable likelihood of a different result. And that's for a number of different independent reasons. Number one, as has already been discussed in Your Honor's colloquy with my colleague, there is no use that they could articulate before Judge Sullivan, or that they can articulate now, more than two years after they've received the recording, as to how the recording could be used either directly or indirectly. The recording itself is, of course, inadmissible hearsay. To the extent that that evidentiary hurdle to admitting the recording could somehow be overcome via a theory that they've never articulated. I think Mr. Bell was suggesting that maybe they could have called Robinson. So, a number of reasons why that would not have led to a reasonable likelihood of a different result. Number one, as Your Honor already mentioned, Taekwon Robinson had a Fifth Amendment right to assert, which almost certainly his lawyer would have advised him to assert. Second, Taekwon Robinson would have almost certainly testified to the ultimate version of what he told the police officers in that interview. And among other things, it is not simply the case that Taekwon Robinson's word was the only thing linking Ernest Murphy to that particular room and the contraband found in that room. Mr. Murphy was recorded bragging to another individual the day after this search went down, saying, Man, am I lucky. They went in there, and I just didn't happen to be there. Boy, if I'd been there, that would have been bad. And, subsequent to that, he is recorded on numerous wiretap recordings trying to have Taekwon Robinson assassinated because he thinks, erroneously, that Mr. Robinson has told on him. So, that is the evidence in the case that ties Mr. Murphy to the contraband in that room, not to mention the fact that all his personal effects were there, pill bottles in his name were there, etc. And, speaking of the assassination, very unlikely that Taekwon Robinson would have been favorably disposed to Mr. Murphy to perjure himself, opening himself up to additional perjury charges by the government in order to act as a defense witness. And all of that is not to mention the fact that there was an enormous amount of other 924c evidence in the case. Keep in mind, Your Honors, Judge Sullivan ultimately excluded almost all mention of the 2013 gun that's at issue in the grand jury. And the evidence of other guns, other 924c guns included, among other things, Mr. Murphy repeatedly bragging on wiretap calls about himself having a duffel, i.e. a gun that he would use against rivals, arranging for other co-conspirators, other co-defendants to get guns, and his ultimately being arrested in a premises where there are loaded magazines. And so, for all of those reasons, Judge Sullivan did not err, much less abuse his discretion, in finding that the defense failed to satisfy the prejudice prong of Brady as to the 2018 Robinson recording. Unless there are further questions, the government will rest on its brief. Thank you, Counsel. We'll hear from Roboto. Thank you, Your Honor. I will attempt to make not one but two points in the minute that I have remaining. I think it's a minute. There it is. That said, ten for a moment. One, I think it's really worth the panel spending some time focusing on exactly what was happening in the grand jury. There was, undisputed, a slide up that had the name of the drug trafficking organization, the drug trafficking gang, which Murphy and that gun could not have been intertwined with in 2013 while this presentation was going on. This presentation happened 31 days before trial. I think anyone who's had the job of assistant U.S. attorney understands what that means. They are trying to solve a problem of how you're going to get all of this really good, what we'll call 924C evidence in, when everybody who actually had something to do with the conspiracy at the time is out. That is the utility of the 924C count, setting aside what it can do on its own merits. And so there is, and third, I think there is a recklessness at best in having an agent come and testify that there is no real information that they have from witnesses that connects this guy to that gun when you've already been told the litany of facts that I told you at the outset of my argument earlier about how that witness, Mr. Curtis, had explicitly said that Murphy had nothing to do with any of that stuff. The trial jury still did find guilt on the 924C count, yes? I understand, they did. And they did that notwithstanding that the 2013 gun was not really a factor in the trial. I understand that as well, Judge. And to be clear, look, there is some, I think, amount of sort of like screaming into the wilderness that comes with the realization that the law as it exists right now may not have a proper recourse for that kind of, I'd say, borderline misconduct or recklessness. But we make the point anyway because that was the problem there with respect to the grand jury issue. With respect to abuse of discretion as to the Brady argument, I recognize the abuse of discretion standard is incredibly high. I do think that where Judge Sullivan erred to that degree was essentially in saying that this couldn't be prejudicial because of the quote, unquote, recantation. The recantation does a lot of work there that I respectfully submit it cannot do. And Mr. Sharing's appeals to the mound of 924C evidence, I think, only magnifies the importance of what it means to have Tyquan Robinson, relatively unpressured, have said, oh, Murphy, yeah, he doesn't have anything to do with this stash house, before stuff gets real and oppositional and, gosh, what is the term I'm looking for? Either him or me later on in that interview. And so I think that when we talk about reasonable likelihood, we don't know whether Mr. Robinson would have testified under those circumstances. It's relatively rare for people to, you know, waive their right against self-incrimination. But it was undoubtedly important as substance, and it could have been explored. And we weren't able to do that, or rather Mr. Murphy's counsel was not able to do that at the time, precisely because these tapes hadn't been properly disposed. But also because he didn't ask for those tapes. I realize that's not controlling. But he didn't ask for those tapes, though he knew they existed, because he did ask for them after the trial, or someone did ask for them on the defendant's behalf after the trial. This is not a case where the government, you know, discovered something that they purportedly didn't know about before and turned it over, or where independent investigation led to the discovery of evidence that the government knew about all along. This is a case where it was known that there were tape interviews of all of these people. Judge, my favorite science fiction book growing up was The Hitchhiker's Guide to the Galaxy. The Earth is destroyed, and immediately, in order to make way for a hyperspace freeway, and immediately before it is, the aliens say, wait a minute, you guys were on notice of this. This was in a cupboard on Alpha Centauri in the local demolition office. At best, Your Honor, given the facts in the brief, we were given a treasure map, at the end of which there might be a little note that says, ask the government about this. It wasn't a proper disclosure that one could actually expect to see. We should have just gotten the recording. Unless there are further questions from the panel, I'll yield there. Thank you, counsel. Thank you. Well argued on both sides. Thank you. We'll take the case under advisement.